**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CHARLES SLAUGHTER, | : | |
| | : | Civil Action No. 07-2163 (GEB) |
| Plaintiff, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| GRACE ROGERS, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Charles Slaughter, Plaintiff, Pro Se
# 491769/ 786127C
Adult Diagnostic & Treatment Center
8 Production Way, P.O. Box 190
Avenel, NJ 07001

John P. Cardwell, Esq.
Sarah Brie Campbell, Esq.
Office of the New Jersey Attorney General
RJ Hughes Justice Complex, P.O. Box 112
Trenton, NJ 08625
Attorney for Defendants Rogers, Hayman, Goodwin, Brown, D'Amico and Wright

**BROWN, Chief Judge**

This matter comes before the Court upon the Motion for Summary Judgment (Doc. No. 175) of the defendants Rogers, Hayman, Goodwin, Brown, D'Amico and Wright ("Defendants"). Plaintiff opposes the motion. The Court has reviewed the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons that follow, the Court will grant Defendants' Motion for Summary Judgment.

## BACKGROUND

On May 17, 2007, Plaintiff, confined at the Adult Diagnostic & Treatment Center ("ADTC"), Avenel New Jersey, at the time he filed this action, filed an amended complaint asserting that the named defendants knew of a smoking problem in the facility and provided inadequate ventilation, and that he has suffered medical problems as a result. He states that he has asthma and requires a breathing inhaler due to the smoke inhalation and is treated by the facility's doctor. Plaintiff also asserted that his legal mail is opened outside of his presence and lost, and he was forced to miss a court date in Union County as a result. He states that his legal mail has come to him open via the daily regular mail run.

As a result of several dismissals, only certain state defendants remain in this action, including: Grace Rogers, the Administrator of the ADTC, George Hayman, the Commissioner of the Department of Corrections; Bernard Goodwin, the Assistant Administrator of the ADTC; Sergeant Brown; Commissary Manager D'Amico; and Chief of Security at ADTC Captain Wright. Discovery is complete.

Defendants filed this motion for summary judgment on November 13, 2009. Plaintiff filed a response to the motion on December 1, 2009.

Defendants argue that summary judgment should be granted in this case for six reasons: the allegations in the amended complaint are improperly based solely upon a theory of respondeat superior; the ADTC is a smoke-free institution and the no smoking policy is regularly enforced; defendants are entitled to qualified immunity; plaintiff has not alleged facts to support a claim of a violation of his substantive or procedural due process rights; there is no evidence that defendants acted with "evil motive" or "callous indifference" to a federally protected right to assert a claim for punitive damages; and plaintiff cannot prove any injuries to support a claim for compensatory damages.

## DISCUSSION

### A. Standard for a Motion for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1219, n.3 (3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989); Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986). The

threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986)(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Pennsylvania Coal Ass'n v. Babbitt</u>, 63 F.3d 231, 236 (3d Cir. 1995); <u>Hancock Indus. v. Schaeffer</u>, 811 F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). The rule does not increase or decrease a party's ultimate burden of proof on a claim. Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive

evidentiary standards that apply to the case." Anderson, 477 U.S. at 255.

Under the Rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains. See Celotex, 477 U.S. at 324. Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," id. at 322 n.3, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted); see also Anderson, 477 U.S. at 247-48 (stating that "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").

What the nonmoving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Lujan v. National

Wildlife Fed'n, 497 U.S. 871, 888 (1990)(stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)(stating that "[t]o raise a genuine issue of material fact, . . . the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[] the 'mere scintilla' threshold and . . . offer[] a genuine issue of material fact.").

The Local Civil Rules supplement the Federal Rules of Civil Procedure and provide that "each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. Civ. R. 56.1. "Where possible, a single joint Rule 56.1 statement is favored." Allyn Z. Lite, New Jersey Federal Practice Rules 192 (2006 ed.)(citations omitted). "Where a joint statement is not prepared, then, under the rule, 'facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.'" Id. at 193 (citations omitted). However, "the parties' statements pursuant to Local Rule 56.1 "cannot bind the Court if other evidence establishes that the stipulated facts are in error." Id. (citation omitted).

6

**B.   Analysis**

1.   Second-Hand Smoke Claim

Plaintiff alleges an Eighth Amendment violation by the ADTC, claiming unconstitutional conditions of confinement.

In all claims alleging cruel and unusual punishment under the Eighth Amendment, an inmate must show both an objective and a subjective component. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). Thus, the inmate must show that the conditions alleged, either alone or in combination, deprived him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. See Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981). To the extent that certain conditions are "restrictive" or "harsh," they are deemed to be part of the penalty that criminal offenders pay for their offenses against society. See id. at 347. Only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. See Hudson v. McMillian, 503 U.S. 1, 9 (1992).

Additionally, the inmate must fulfill the subjective element by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997).

According to the record of this case, the ADTC has been a smoke-free institution since July of 2001. (Declaration of

7

Brenda Izbicki, "Izbicki Decl." Ex. B). There is a no-smoking policy in effect, said policy being provided to all staff members and inmates at ADTC in June of 2001. (Izbicki Decl. Ex. C) Smoking is permitted in outdoor areas only, and inmates are permitted to purchase tobacco products from the commissary to use in these outside areas. (Izbicki Decl. Ex. C). Inmates are not permitted to smoke indoors, according to the policy, and are subject to disciplinary action for doing so. (Izbicki Decl. Exs. B, C). If inmates are found smoking indoors in violation of the no-smoking policy, they receive a formal disciplinary charge for disciplinary infraction .553, smoking where prohibited, in violation of N.J.A.C. 10A:4-4.1. (Izbicki Decl. Ex. B). Staff was reminded of the importance of the no-smoking policy in a memorandum dated December 2006. (Izbicki Decl. Ex. D). Defendants provided proof that between June 2005 through February 2007, when Plaintiff filed his complaint, at least 48 disciplinary charges were issued to inmates at ADTC for violation .553. (Izbicki Decl. Ex. F).

Plaintiff asserts in his deposition that he has witnessed inmates and staff smoking inside the building, and has complained about it on numerous occasions, possibly eight times. (Declaration of John P. Cardwell, "Cardwell Decl." Deposition pp. 52-53). He contends that he witnessed defendant Captain Wright, the acting chief of security, smoking, but did not report him.

(Cardwell Decl, Deposition pp. 13-15). He argues that exposure to environmental tobacco smoke ("ETS") is harmful and a health risk, especially to him because he suffers from asthma. As a result of the smoke, his asthma worsened and he was placed on an inhaler. (Cardwell Decl, Deposition pp. 23-24, 46, 53-55). Plaintiff filed numerous remedy forms with regard to the smoking in the building. (Izbicki Decl. Ex. G).

Both parties' statements of material facts address different aspects of the claim: Defendants note that the no-smoking policy is in effect and being enforced; Plaintiff asserts that he is being exposed to environmental tobacco smoke ("ETS") which is damaging to his, and everyone's health and that the Department of Corrections should cease the selling of tobacco products. Plaintiff does not dispute Defendants' facts that there is a no-smoking policy which is being enforced; albeit, Plaintiff notes that the violation of the policy is what is causing him harm.

However, in reference to the standard necessary to find a violation of the Eighth and Fourteenth Amendments, Plaintiff has not demonstrated deliberate indifference. Plaintiff has not shown that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." The record of this case reveals quite the opposite: that the defendants were active in disciplining offenders for smoking. Memos were

9

sent to inmates and staff concerning the smoking ban. Although the system may not be foolproof in that inmates and staff may have violated the policy, there has been no deliberate indifference to this issue by ADTC officials.

Thus, as a matter of law, Plaintiff has not demonstrated a violation of the Eighth Amendment.

2. Legal Mail Claims

Plaintiff complains of his legal mail being opened outside of his presence.

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. See Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983). In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. See Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). See also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access

to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The right of access to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any _other_ litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).

It is long established that in order for Plaintiff to establish a denial of access claim based on interference with his legal mail, he must demonstrate that he suffered an actual injury as a result of Defendants' denial of his right to access the courts. "The requirement that an inmate alleging a violation of Bounds must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." Casey, 518 U.S. at 349. In Casey, the Supreme Court stipulated that an inmate can only establish "actual injury" where his alleged hindered legal action concerned a direct or collateral attack upon his sentence, or a challenge to his

11

conditions of confinement: "In other words, <u>Bounds</u> does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." <u>Id.</u> at 355.

Prisoners, however, may establish a violation of the First Amendment without establishing an actual injury where there is a pattern and practice of opening properly marked incoming mail outside an inmate's presence. As the Third Circuit has stated, "nothing in the reasoning of <u>Casey</u> or <u>Oliver</u>[<u>v. Fauver</u>, 118 F.3d 175 (3d Cir. 1997)] suggests that a prisoner alleging that officials have opened his legal mail outside of his presence and thereby violated his First Amendment rights need allege any consequential injury stemming from that violation, aside from the violation itself." <u>Jones v. Brown</u>, 461 F.3d 353, 359 (3d Cir. 2006).

Thus, inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments; an inmate's constitutional right to send and receive mail may be restricted

for legitimate penological interests. See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987). A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation. See Morgan v. Montayne, 516 F.2d 1367 (2d Cir. 1975). But, the assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen states a First Amendment claim. See, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1431-32 (7th Cir. 1996); Castillo v. Cook County Mail Room Dep't, 990 F.2d 304 (7th Cir. 1993). "[A] pattern and practice of opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech. Such a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court." Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995), implied overruling on other grounds recognized in Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). A policy of opening legal mail outside the presence of the inmate violates the inmate's First Amendment right to freedom of speech, and is not reasonably related to a prison's legitimate penological interest in protecting health and safety of prisoners and staff. See Jones v. Brown, 461 F.3d 353 (3d Cir. 2006).

According to documents submitted by defendants, from October 2001, until September of 2006, the ADTC was opening legal mail outside of the presence of the inmates due to concerns about hazardous materials and contamination. (Izbicki Decl. Ex. J). In September of 2006, the opening of legal mail was ceased, and the procedure for handling legal mail returned to pre-September 11, 2001 policy. (Izbicki Decl. Ex. K). In Plaintiff's deposition, he states that his legal mail was opened in violation of the policy through 2007 and possibly to 2008. (Cardwell Decl., Deposition pp. 29-30). As a result of the violation of the mail policy, Plaintiff's mail was lost, or, he believes, read and information disseminated around the facility. (Cardwell Decl., Deposition pp. 30-34). A pending civil case by Plaintiff was closed as a result of the mail problems; however, the court allowed Plaintiff to reopen his case and eventually the case settled. (Cardwell Decl., Deposition pp. 32-35). Plaintiff states that although the policy was changed back to pre-9/11 procedures, it was not until 2008 that the policy was enforced. (Cardwell Decl., Deposition pp. 29-30).

The record of Plaintiff's administrative remedies shows that Plaintiff's first complaint of his legal mail being opened was dated September 14, 2006. The policy was not changed back to pre-September 11, 2001 procedures until September 29, 2006. A summary of the other remedy forms filed by Plaintiff and included

as Exhibits in the record of this matter demonstrate that: (1) on November 15, 2006, Plaintiff complained about his legal mail being tracked and recorded; the response to the remedy revealed that the mail was not being recorded, but that incoming legal mail required inmates to sign a receipt; (2) on December 4, 2006, Plaintiff complained that he was told by other inmates that they saw legal mail for him when they went to get their mail, and Plaintiff did not receive it; the response to the remedy revealed that Plaintiff did not receive legal mail on the date in question; (3) on January 31, 2007, Plaintiff states that a notice to appear was sent to him by Union County and that he did not receive it and missed a court date as a result; the response to the remedy revealed that Plaintiff did receive legal mail from Union County on two occasions in the past month according to their records; (4) on April 13, 2007, Plaintiff complained that legal mail from the Internal Revenue Service ("IRS") was given to him opened; the response to the remedy reveals that the mail was not considered legal mail and any misunderstanding was an oversight that would be corrected; (5) on April 17, 2007, Plaintiff again complained about open mail; the response suggests that the matter was resolved; and (6) on May 18, 2007, Plaintiff complained that mail from the IRS was again opened when he received it; the response informs Plaintiff that IRS mail is not considered legal mail and that if it were legal mail, the IRS

would write "legal mail" on the envelope or it would be sent certified and Plaintiff would have to sign for it. (Izbicki Decl. Ex. M).

Here, the record is clear that the policy was changed back to pre-September 11, 2001 procedures in September of 2006. Plaintiff has not demonstrated that the facility had an unconstitutional policy, or a pattern and practice, of opening legal mail outside of an inmate's presence after the policy was changed back; rather, Plaintiff, at most, shows that there may have been some error or confusion with regard to his own legal mail coming from the IRS. Indeed, the definition of "legal correspondence," according to the legal mail policy of the facility, does not specifically include mail from the IRS. The policy notes the following to be considered "legal correspondence:" mail from attorneys, public defenders, the public advocate, the Attorney General's office, all courts and judges, legal services, legal clinics, the Administrative Office of the Courts, prosecutor's offices, DOC Internal Affairs and Ombudsman mail, mail from the Office of Administrative Law, and from the Bureau of Risk Management. (Izbicki Decl, Exhibit I, p. 8). Plaintiff admits in his deposition that he spoke to defendant Sergeant Brown about the problems with his mail, and Sgt. Brown advised that he would "talk to his people" to ensure that it didn't happen again.

16

Defendants state in their material facts that as of November 13, 2006, when the mail policy was changed back to pre-9/11 procedures, the legal mail at the facility has been processed appropriately. Plaintiff provides no material facts with regard to his mail claim.

The record provided, and Plaintiff's deposition, taken together, do not disclose material facts at issue that need to be resolved at trial. As a matter of law, Plaintiff has not shown a constitutional violation as he has not demonstrated a pattern or practice of opening properly marked legal mail. As noted above, a single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation. See Morgan v. Montayne, 516 F.2d 1367 (2d Cir. 1975). While a pattern and practice of opening legal mail may infringe on an inmate's First Amendment rights, Plaintiff has not demonstrated such a pattern and practice, and the record of this case shows that Defendants' policy is constitutionally sound.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment will be granted. An appropriate Order accompanies this Opinion.

_____
GARRETT E. BROWN, JR., Chief Judge
United States District Court

Dated: